Good afternoon, and hopefully you can hear me. We can. Excellent. May it please the Court. My name is Paul Warner, and I represent Trout Unlimited in this appeal. With the Court's indulgence, I would like to reserve two minutes for rebuttal. You'll have to help keep track of your time, because we may use quite a bit of it with questions. Yes, Your Honor, I understand. EPA's decision to withdraw its proposed determination under Section 404C of the Clean Water Act to restrict mining operations in Bristol Bay is subject to judicial review under the EPA. That decision is a final agency action, and it is the culmination of the entire 404C process. Once EPA sets that process in motion by initiating the process and promulgating the proposed determination, it was required by the statute, by its regulations, by its policy, and by its practices to make a binary up-or-down decision. It had to finalize the proposed determination, or it had to withdraw it. It had to leave the restrictions in place, or it had to remove them. And Section 404C makes clear that EPA's decision must be based on one and only one consideration, and it is set forth in the statute, and that is unacceptable adverse environmental effects. And the statute further provides, in plain English, that EPA shall set forth in writing and make public its findings and reasons for making any determination under the statute. And, of course, any means all includes a decision to withdraw a proposed determination. That decision, both to enjoin mining under the proposed determination and to withdraw the proposed determination, had real consequences. It impacted rights and obligations. The proposed determination provided benefits to Trout Unlimited and its members, such as fishing lodges who want the area preserved in its natural state, and it carried consequences for anyone who wanted to pursue mining that exceeded the specific restrictions set out in the proposed determination. Mr. Werner, maybe you can help me with this aspect of it. This is where I'm having difficulty with the points that you just made, which is that you're referencing the standard in the statute and regulations, unacceptable adverse effect. But when you read the statute and regulations, that would seem to be the standard that applies when the EPA is prohibiting the specification. It's not apparent that it's the standard that would apply if they are withdrawing a proposed determination. So maybe you can walk through how you got to that point. Well, sure. The EPA's regulations set out a tiered process under which the level review is ratcheted up until it makes a final determination. And all along the way, the central question is, does the proposed activity cause, will it cause unacceptable adverse effects? So that's the core consideration. I'd like to sort of layer on an additional factor to Judge Bress's question as you're going through this, because to get to a proposed determination, which is where we were, there doesn't have to be a certainty that there's an adverse effect. There just has to be, and I'm paraphrasing because I don't have it in front of me, but basically reason to believe that it might be an adverse effect. It's a little bit lower standard for the proposed determination. So why wouldn't that be the appropriate standard for withdrawing it? To say, well, I no longer have a reason to believe that it might be adverse because there's been an earthquake and the whole place is a mess anyway, or we have different environmental controls that will take care of the problem, or we know more about the science, or something like that. Why wouldn't you stay within this subsection for the standard? Well, you would, Your Honor, and you're right, it refers to could. And ultimately, as I was saying, the regulations provide a tiered process for review of proposed activity, and at each level it goes from could to likely to will, and the statutory language itself, of course, is will. So in the past, and there's only been one instance of this, where the EPA has actually withdrawn a proposed determination, it did, as you say, look back to the statutory standard and apply it and reverse itself and withdraw the determination because the court had addressed its concerns with respect to unacceptable adverse effects. But ultimately, the standard that gets applied here is a merits question that's not yet before the court. No, I understand that, but you're telling us that you... I guess it's a question. Is it enough to say, well, there's some standard out there, or if we were to conclude that this is reviewable, wouldn't we have to identify specifically what that standard ought to be? Or are you saying it's premature even to do that as long as we can identify one or more possibilities? What's your position on that? Yes, Your Honor. I would say the court doesn't have to do that. I think it would be helpful if it did do that. And in other cases, and there's a long line of them, both in this court and at the Supreme Court, where there is not any specific standard of review, the court looks to the overall statutory structure and the policy. And here, I think, unlike some of the other cases, and we cite them in our brief, but there's a range of them, and Esmeralda would be one that involves considerations under your document. There is no standard. But in this statute, there is a standard, and it's very clear. And it's binary. Don't you think, Counsel, that we would have to determine there is a standard in order for you to prevail? Because it would seem to me that if the argument is, this is not agency action committed to the agency's discretion, we would then be having to say, well, what is the legal standard that either the statute or the regulation sets forth? Because if there was not one, then it's not apparent how it could be judicially reviewable. If there was one, then it may be. And it would seem to me we would have to answer this question, wouldn't we? Yes. You're right, Judge Bress. The court would. And the standard is the unacceptable adverse standard. But, of course, it's also coupled with the APA standard. And, again, in cases like Weyerhaeuser, where the Supreme Court has addressed similar statutes that are entirely permissive, the court has said, you look at the standards in the statute, and here it's unacceptable adverse effect. And then you evaluate the agency decision-making, like you always would under the APA, based on its own terms, the record and the reasoning that it is. I guess the area where I'm not following or not with you on this is unacceptable adverse effect is the standard for beginning a 404C process and then ultimately prohibiting something. But it's not the standard for withdrawing the proposed determination. There is, to my review of the regulation, it's not apparent that there is such a standard. But I don't think if there is such a standard, I don't see how unacceptable adverse effect or acceptable adverse effect would be that standard, just based on the way the regulations are drafted. Well, not under the regulations, but under the statute. Of course, that is the guiding animating principle that guides its entire agency review. So it only makes sense that it's the converse standard that would be applied when withdrawing a proposed determination. And, again, the EPA has applied it that way. It's withdrawn a proposed determination when it found that the action would not have an acceptable adverse effect. But just because it did that once doesn't mean that it has to do that, does it? Well, no, but when the court looks at cases like this... That's why I asked you about, really, to me, a much closer parallel, which is reason to believe that it could. You want a high bar up here, and I'm suggesting there's a low bar down here that appears to be more in line with the proposed nature of the action. In other words, a proposed determination and withdrawal of a proposed determination would seem to me to have to be looked at as opposite sides of the same coin, with a different coin, a richer coin somewhere else. And I just have difficulty grafting together a completed determination with a withdrawal of a proposed determination. And, Your Honor, we're not in disagreement on this. I completely agree with you that the decision really is the opposite side of the same coin. And, yes, you're right. For the proposed determination, the standard is could. Our only argument is that there is a standard. And if it's could, well, then that can be reviewed on remand. The court found that there was no standard at all. We're not arguing for a higher standard. We're simply arguing for a substantive standard that applies when the EPA withdraws a proposed determination as it has here. And the argument put forward by the government so far has been that it is a purely discretionary act and it can initiate and stop this process however and whenever it sees fit. So our basic argument is only there is a standard, and it can be applied by a court in reviewing the action, whether it's could or will or whatever. The standard is ultimately key to the key statutory criterion that's in Section 44C. And, of course, if they're right that it's completely discretionary, then this conversation we've been having is not relevant. Correct? That's true. Yes, that's true. But I don't think that they're right. And I think this Court's case is made clear as well as the Supreme Court's. This is not a case where there has been no action. There has been an action. EPA took a substantial and significant step by initiating a Section 404C process. It's only done that 13 times in the entire history of the statute. That is a substantial step, and it moved forward with that process for years. And it considered, after public notice and comment, actually withdrawing the proposed determination, and it decided not to. And then it did. And this case then tracks. The most recent example is the DACA decision from the Supreme Court in Regents. This was a discretionary act, but it was an act. And acts, even though they are discretionary, are still subject to judicial review. Mr. Warner, I'm a boss from the East here. If we find, sir, that there was a final action subject to judicial review, and if we then say that the motion to dismiss should be reversed, how do you propose we proceed from that point? What are the standards? As a judge, what happens? I'm sorry, I had a little trouble hearing you, but if I did hear you correctly, in terms of the instruction to the district court on remand, we would ask that it be reversed and that the court be instructed on the standard to use and we agree it could be the could standard, but it needs to be reviewed based on the statutory criteria as well as the general process inquiry that courts perform under the APA with respect to reviews and decision making. Do you acknowledge that the initial 404C process, in other words, whether to even start down that road in the first place, that that is committed to agency discretion? It may be, Your Honor, and that's not this case. There is a decision that we cited in the court where the district court in the District of Columbia had found that that was reviewable, but this court doesn't need to go there and doesn't need to make that determination. The only thing we are arguing to the court today is that once the EPA acts, based on whatever discretion it has, that action becomes reviewable. And again, this court's cases are very clear on that and we cite a number of them in our brief. I referenced the Esmeralda case, but there is also the recent Uvisa case and the Perez-Perez decision as well as the Supreme Court's recent teachings in the Weyerhaeuser case and the New York citizenship question case. All of those involved purely discretionary acts, but once they were undertaken, they were reviewable. Counsel, you're down to about a minute if you'd like to save it for rebuttal. Thank you, Your Honor. And we will hear from Ms. Katselas. If I mispronounced it, I apologize. Good afternoon, Your Honors, and no, Judge Graber, you pronounced it correctly. I hope the court can see and hear me. I can't see my own video. We can. We can. Okay, good. Go ahead and identify yourself. May it please the court? My name is Anna Katselas and I represent EPA. And, you know, at the outset, it's very important here. I'd first like to get straight to the heart of the matter. There simply is no law to apply to EPA's decision to withdraw its proposed determination because neither Congress in Section 404C nor EPA in its implementing regulations provided any standard against which a withdrawal decision could be evaluated, much less a meaningful standard, which is required. Counsel, first of all, do you excuse me? I have a number of questions, but the first one is whether you agree with the proposition that this is a final agency action. Well, Your Honor, the agency said that, and it's not the issue here. You may think it's not the issue, but it's the question I ask, and it's a yes or no question. Is it a final agency action? We haven't contested that, so yes, Your Honor,  And my second question to you is the following. If the proposed determination had ripened into a completed determination, do you agree that that would be reviewable judicially? If EPA had issued a final determination, taken the last step? Yes. Is that reviewable? Yes, Your Honor. Okay, so here's my third question. Are you aware of any other situation in administrative law, and maybe there are some that I just haven't come across, where a process is reviewable or not, depending on whether the answer is yes or no? In other words, if someone is, let's say, a Social Security claimant, they either get benefits or they don't, it's reviewable one way or the other. And what you're arguing for is, if I understand it, if our proposal gets to a determination, it's reviewable. But if our proposal doesn't get it, we go the other direction and we say, no, no, never mind, it's not reviewable. Are you aware of any analogy anywhere else where that is the case? Well, Your Honor, I'm not sure about, I mean, certainly in numerous other circuit instances, agencies explore issues, issue proposed, explore issues before they make a final determination. But I'm not aware of cases holding that those interim, those exploratory steps are reviewable. That's why I started with asking if it's a final agency action. I'm asking if you are aware of any other situation in which an agency takes a final agency action and it's either reviewable or not, depending on whether it's pro or con. And, you know, I guess my problem, let me just be upfront with my problem with your position. You analogize it to a prosecutor's discretion, whether to prosecute. But if a prosecutor decides to indict someone, that's not reviewable. That's their prerogative. If they decide not to indict that person or they withdraw the indictment because their witness died or they lost their favorite prosecutor, that's not reviewable. But it works both ways. And what concerns me is you're sort of trying to have this, have it both ways, it seems to me. I respectfully disagree, Your Honor. I think certainly, you know, if a prosecutor prosecutes and there is a judgment of conviction, there is review of that. If an agency exercises its discretion and applies a substantive standard, that is the instance, and Heckler v. Cheney described and explained this very well, that is the appropriate, that is the normal typical case in which APA, circumstance in which APA review occurs because the agency has exercised its authority. It's brought its power to bear on a regulated party or, you know, but where the agency decides not to... Well, it has here too in the sense that there are consequences in the real world. But I want to ask you also about this question of a standard and whether for good or ill, our court has been really pretty creative in finding standards where there aren't any stated in the statute. And Esmeralda is a good example of that where, you know, where the court said a judicially manageable standard readily presents itself and then they just sort of make it up. And it seems to me here that there's even a closer ability to figure out what it is they should be looking at, which is this question of what caused the proposal in the first place, if that's no longer true. It seems to be a fairly obvious standard. Your Honor, I don't think the court has been creative in creating standards. Esmeralda is another case in which the agency took action. Many of the cases on which Trout Unlimited relies are in opposite and not controlling because they involve exercises of authority. So in Esmeralda... But that's a different question. You were saying that... It seems to me there are two separate questions. One is whether there's an action using the agency's authority. But the second question, and it's a separate one, is is there a standard by which it could be reviewed if it's a final agency action? And so I'm looking only, in my question to you now, is only at that little piece at the end. Is there a manageable, judicially sensible, reasonable standard that is findable in the statutory scheme that would make it a real standard and not just something that we sort of make up? Respectfully, Your Honor, there is none. There is no standard to be found in the applicable statute or in the regulations. And if I could have a moment to walk through that with Your Honor. In Section 404C, Congress authorized EPA to take this action, to exercise its 404C authority. It did not require EPA to do so in every circumstance. And it provided no standard by which a court could decide when and whether EPA should exercise its authority. It's very important to keep the standards distinct. There's the standard that EPA would apply in a final determination. Unacceptable adverse effect will occur. And I would like to also address that the proposed determination did not make that determination, or it's a much lower step. But the issue before the court, Your Honor, is whether there is a standard for the exercise of EPA's broad discretion that Congress obviously gave it, and there is not. But again, counsel, that's the question that Judge Bress asked, which is if they decide not to go down this road at all, is that reviewable? But that's not our question. EPA did go down this road already. They issued a proposed determination. They went down the road. It had real-world effects. They did it. And we assume that they did it on a discretionary basis. We don't know why they decided to do it, but they did it. It's done. So now the question is, when they undo it, is that something that is reviewable? No. Not when they did it originally is it reviewable, but when they do it now. I mean, for multiple reasons, Your Honor. Respectfully, the answer is no. One, first and foremost, Congress didn't constrain EPA's discretion, and EPA also has not constrained its discretion to withdraw a proposed determination. 404C is the applicable statute. There is no standard. The applicable regulatory provision on this point is 40 CFR Section 231.5C1. This is the stage, this is the point. This provides for a withdrawal under this circumstance, where the regional administrator makes the determination, the EPA administrator declines to review. There is no substantive standard in that provision. All it requires is that notice of the decision be given. EPA went beyond that here. EPA took notice and comment and went beyond that. It says that such notice shall constitute final agency action, which I assume is why you're not challenging that it's a final agency action. But the fact that it isn't in 231.5C doesn't mean that we put blinders on with respect to the rest of the regulations or the context. It doesn't mean that there is no standard anywhere. It just means it's not there. Respectfully, Your Honor, it means there is no standard applicable to this issue before the court. And what it means is that Congress did not commit oversight of EPA in this respect to the court. That is clear from the statutory scheme and from the regulations. Now, the unacceptable adverse effect standard is irrelevant. And Heckler v. Cheney makes that point very clear. This exact argument was raised in that case, that there is a substantive standard. And in cases in the enforcement context like this one, there will almost always be a substantive requirement or a prohibition that an agency is authorized to prosecute or to enforce. But that doesn't give a court discretion to weigh in on whether the agency ought to do so because it thinks that that substantive standard has been met in a particular case or it thinks that the agency should exercise its discretion. The question is whether Congress or EPA manifested an intent that the court make that determination. And if I could, Your Honor, I'd like to address the point about final agency action and also the point that you've raised and I've not yet had an opportunity to address about the proposal and the withdrawal. Now, on final agency action, it's not relevant. We have explained in our brief, final agency action is one hurdle that a plaintiff must overcome in order to obtain review under the APA. It is not the only hurdle, and it is not the hurdle that is at issue here. The issue here is whether this has been committed to agency discretion by law. We have cited a number of cases. There are other instances, Pacific Gas, for example. We cite Pacific Gas and Electric Company v. FERC. In that case, the Federal Power Act provided for judicial review of FERC orders, but the court declined to review the specific FERC order because it was, in essence, a decision not to exercise a discretionary enforcement authority that was unreviewable. Now, if I could, Your Honors, it makes no difference in this analysis that EPA proposed action and withdrew it. This is not a rescission. EPA did not take action and rescind anything. The proposed determination is not a final agency action, and it was only the first step of the process. Excuse me. Let me ask you a question. Is there a specific definition of rescission that precludes this from being considered a rescission? Well, I think, Your Honor, there was no action. There was never a final determination. There's never... I mean, in the cases that, you know, again, there's no... The reason I'm asking is that 231.6, you have some timelines in it, which I'll leave out, because that's not the issue. The administrator shall make a final determination affirming, modifying, or rescinding the recommended determination. So what does it mean to rescind a recommended determination that's different from withdrawing a recommended determination? Well, first and foremost, 231.6 is inapplicable here because this is not an instance in which the administrator exercised its authority to review. The applicable regulatory provision is 231.5 because this happened at the... Because it's the regional administrator involved. Correct. But there was no recommended determination either, right? It was all there was. It's a proposed determination, and that was then withdrawn. That is correct, Your Honor. And, I mean, there are, of course, instances... I mean, and also the case... Again, you know, there are two points about the proposed determination and the withdrawal. One, there is no standard applicable to withdrawals, no substantive standard for the court to evaluate. It only requires that notice be given. Notice was given. Trout Unlimited has made no argument that the procedures were not satisfied. And on the second point, these cases... You know, the point that an agency's choice not to exercise a discretionary authority are not negated or rendered inapplicable because the agency considered the issue to some degree. In Heckler v. Cheney itself, the agency had been petitioned to take very specific enforcement action, responded with reasons why it decided not to do so. I'd also like to bring up Menominee Tribe. It's very closely analogous. It was a withdrawal of objections to a proposed permit under 404J. And the court did an excellent job in that case of explaining there is no standard applicable here. EPA explored the issue. EPA explained in its preamble to the final rule, a proposed determination merely means that it can be explored. The Administrative Procedure Act does not allow courts to review explorations of issues that do not culminate in a reviewable action. And while this culminated in the final agency action, it is still unreviewable because there is no law to apply to the withdrawal. And if the court has... Yes, Your Honor? No, I was just going to observe that you'd come to the end of your time if you'd like to sum up in a sentence or two. That's it. Final agency action is not the issue. This is committed to agency discretion by law because there's not a standard for the relevant question, which is whether and when EPA must exercise its authority. And we respectfully request for these reasons that the district court's judgment in favor of EPA be affirmed. Thank you, counsel. And I believe, Mr. Werner, you have a little bit of rebuttal time remaining. Thank you, Your Honor. Final agency action isn't just relevant. It's central, and usually it's the entire ballgame. The withdrawal of the proposed determination here was a culmination of the agency's decision-making process, and it fixed rights and obligations both for industry and for the public. Under the EPA, an action like that is presumptively reviewable, and it should be here. There's no question that the proposed determination was an action, and its withdrawal was also an action. The proposed determination imposed specific restrictions on mining within a designated area related to loss of streams, loss of wetlands, and alteration of streams. Just ask the miners if that had a significant impact on their ability to mine within the Pebble Deposit. It most surely did, and by the same token, it carried benefits for my clients and its members. It preserved their ability to use and earn their livelihoods on the Bristol Bay area. This is not one of those cases like Heckler. Even Heckler said that an enforcement action is reviewable because it provides a focus for judicial review. The same thing here, and as Your Honor, Judge Graber, you've already pointed out, this court has had no trouble in far more difficult circumstances finding standards of review where agencies have taken discretionary actions just like the one here. And if I may, I just want to touch on the Menominee case. That case really doesn't have anything to do with this one. There, there was no final agency action, and the actual action or non-action under review was EPA's discretionary decision not to re-object to a permit proposal. That's not what is going on here, and the reasons that the court used in reaching that decision are also fundamentally infirm, as Judge Graber, you've already pointed out. Where there's a final determination one way or the other, even if it flowed from a discretionary process, it is typically subject to judicial review. Thank you. Thank you, counsel. Your time has been exceeded, and I think we understand your position as well. Thank you, Your Honor. The case just argued is submitted, and I want to thank both counsel. This is a very challenging case, obviously, and you've both been extremely helpful, and we appreciate your arguments. And with that, we are adjourned for this afternoon's argument session.
judges: Graber, Dawson, Bress